UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 09-60(1) & (2)-ART |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| CAMERON GOETTING & | ) | |
| JOSEPH WALTON, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The defendant Cameron Goetting ("Goetting") filed a motion to suppress evidence obtained pursuant to an allegedly unlawful stop and detention. R. 23. United States Magistrate Judge Robert E. Wier held a lengthy suppression hearing on the motion. R. 33. After the hearing, the defendant Joseph Walton ("Walton") joined in Goetting's motion to suppress.[1] R. 38. Walton separately briefed the issue, R. 44, and the United States responded, R. 46. Goetting then filed a supplemental brief, R. 45, as did the United States, R. 47, and Goetting replied, R. 48. On February 2, 2010, Judge Wier issued a recommended disposition of the defendants' motion, advising that the Court deny the motion to suppress. R. 49. The defendants both filed objections to the recommended disposition. R. 53, R. 54. On March 8, 2010, the United States filed a response to the objections. R. 60.

---

[1] When Walton filed his motion, R. 38, to join in Goetting's motion to suppress, the Court ordered Walton to brief the issue of standing and whether he wanted his own hearing. R. 41. Walton never requested his own hearing, nor was he present for Goetting's hearing. Therefore, as part of the recommended disposition, Judge Wier granted Walton's motion to join Goetting's motion, but only to the extent that Walton joins in Goetting's specific arguments. R. 49 at 1 n.1.

I.    **The Motion to Suppress as to Goetting**

The Court has reviewed the recommended disposition regarding Goetting's motion, R. 49, Goetting's objections, R. 53, and the government's response, R. 60. Because the officers had reasonable suspicion to stop Goetting and the stop remained within pre-arrest parameters, the Court adopts Judge Wier's recommended disposition and denies Goetting's motion to suppress the evidence.

**A. The initial stop of Goetting's vehicle**

Goetting presents several objections to the recommended disposition. R. 53. He argues that the government did not have reasonable suspicion to stop and detain him and that the officers acted only on an "unparticularized suspicion" or a "hunch." *Id.* at 9-10.

To the contrary, Judge Wier points to sufficient factors to show that law enforcement had reasonable suspicion to detain Goetting. *See* R. 49 at 2-7, 9-11. Kentucky State Police Detective David Lassiter ("Lassiter") was working with a confidential informant ("CI") to arrange a three-ounce methamphetamine purchase. R. 33 at 6. Judge Wier found Lassiter's testimony at the hearing particularly credible. R. 49 at 12 n.5. Lassiter received information that the CI's out-of-state source, "Joe"—later identified as the defendant Joseph Walton—would bring a seller with him to meet the CI in Williamsburg, Kentucky on May 6, 2009. R. 33 at 6-7. Lassiter expected Walton and the seller to arrive from either Georgia or South Carolina. *Id.* at 8, 62-63. On May 6, Lassiter observed the CI and Walton in Williamsburg and overheard one of them mention Burger King. *Id.* at 80-81. The CI also informed Lassiter that he and Walton were at the Williamsburg Days Inn near I-75. *Id.* at 33-34. The Days Inn is directly across Kentucky

Highway 92 from a Burger King; the Days Inn lot is clearly visible from the Burger King lot. *Id*. at 34.

Based on this information, the events that happened next created reasonable suspicion that Goetting was involved in illegal activity. Judge Wier thoroughly considered the applicable law in this case. *See* R. 49 at 12-13. In short, *Terry v. Ohio* permits an officer to detain an individual with less than probable cause if the officer "can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. 1, 21 (1968). Only "some minimal level of objective justification" is required to justify a *Terry* stop. *United States v. Brown*, 310 F. App'x 776, 779 (6th Cir. 2009) (citing *INS v. Delgado*, 466 U.S. 210, 217 (1984)).

An officer observed Walton walking from the Burger King parking lot toward the Days Inn. R. 33 at 38. Lassiter sat in the Burger King lot in an unmarked vehicle, and he noticed only one other occupied vehicle in the Burger King parking lot. *Id.* at 48-49. That vehicle was running and in gear, and the driver had his foot on the brake. *Id.* at 51. The vehicle had Georgia license plates. *Id.* at 62. Its driver was looking toward the Days Inn. *Id.* at 55-56. Based on these observations and his prior intelligence, Lassiter then suspected the driver—later identified as the defendant Goetting—to be Walton's seller. *Id.* at 62. Lassiter directed other officers to apprehend Walton in the Days Inn parking lot, while he observed Goetting's reaction. *Id.* at 64-65. An identifiable police vehicle and three uniformed police officers approached Walton and arrested him. *Id.* at 61-64, 126-27. When this occurred, Goetting began to back his vehicle out of the parking space. *Id.* at 61-63. Unprovoked flight such as this is an established pro-stop

3

*Terry* factor. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Then, Lassiter pulled his vehicle in behind Goetting's to stop Goetting from exiting the lot. *Id.* at 66.

Goetting, in his objections, attempts to explain away many of the facts. R. 53 at 11. But in reviewing whether an officer has reasonable suspicion, "the question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 274-75, 277 (2002)). All of these facts, along with others mentioned in Judge Wier's recommended disposition, gave Lassiter reasonable suspicion that Goetting was Walton's seller, and thus engaged in illegal activity.

### B. Goetting's detention

Goetting further argues that the initial *Terry* stop ripened into an unlawful detention based on its duration and the officers' use of force. R. 53 at 12-14. In addition to showing that a detention without probable cause is supported by reasonable suspicion, the United States must also prove that the detention and investigative methods used were reasonable under the circumstances. *United States v. Heath*, 259 F.3d 522, 529 (6th Cir. 2001) (citation omitted). Lassiter and another officer stopped Goetting by pulling up in their vehicles to block his path in the parking lot. The officers then approached with their guns drawn and placed Goetting on the ground. *Id.* at 66. It is unclear whether he was handcuffed. *Id.* at 66-67. He was then placed in a police vehicle. *Id.* at 68. Goetting argues that these actions constituted an unreasonable show of force. He is incorrect.

"An investigative *Terry* stop may indeed ripen into an arrest through the passage of time or the use of force." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814 (6th Cir. 1999) (citation omitted). When effectuating a stop, however, officers are permitted to take steps reasonable for their protection. *Id.* at 814-15. A methamphetamine deal between strangers, in Lassiter's experience, created a basis for concern about possible firearms and violence. R. 33 at 68-69. "This Circuit permits the use of force, such as handcuffs and guns, to effect a stop when such a show of force is reasonable under the circumstances of the stop." *Heath*, 259 F.3d at 530 (citing *Houston*, 174 F.3d at 815). Thus, the steps taken to constrain Goetting were justified under the circumstances.

Goetting also objects to Judge Wier's report because Judge Wier did not apply the factors set out in *United States v. Williams* to determine when an investigatory stop becomes an arrest. 170 F. App'x 399, 403 (6th Cir. 2006) ("(1) transportation of the detainee to another location; (2) significant restraints on freedom of movement involving physical confinement or other coercion; (3) use of weapons or bodily force; and (4) issuance of *Miranda* warnings"). But Judge Wier did consider these things as part of the "fact-sensitive inquiry, depending on the totality of the circumstances." *United States v. Smith*, 549 F.3d 355, 360 (6th Cir. 2008) (citing *Williams*, 170 F. App'x at 403). No one factor is dispositive. *Williams*, 170 F. App'x at 403.

Finally, Goetting argues that he was detained for an unreasonable length of time without probable cause. R. 53 at 12-13. After Goetting was placed in the police vehicle and less than ten minutes after the stop, Kentucky State Police Trooper Jason McCowan screened his vehicle with an experienced K-9 unit. R. 33 at 78, 113. A few seconds later, both dogs from the unit had

5

positive alerts on the passenger side of the vehicle. *Id.* at 114-115. Police then found methamphetamine in the floorboards of the vehicle, which gave them probable cause to arrest Goetting. *Id.* at 117-19. Lassiter testified that he detained Goetting at 10:39 a.m. and arrested him at 12:40 p.m. *Id.* at 44.

Goetting argues that this delay amounted to an unreasonable confinement. R. 53 at 13. Yet, Goetting does not dispute that once the officers discovered the methamphetamine, they had probable cause to arrest him. Thus, Goetting was only detained without probable cause for approximately ten minutes, a reasonable amount of time for officers to effect a canine sweep to gather more information. *United State v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) (finding that "the duration of the stop was reasonable" when "the canine sniff was performed within a half hour of the stop"). For the reasons stated herein and in the recommended disposition, the scope of the detention before the officers obtained probable cause was reasonable.

Accordingly, the defendant's motion to suppress, R. 23, is denied, and Judge Wier's recommended disposition, R. 49, is adopted.

## II. The Motion to Suppress as to Walton

After the hearing, Walton filed a motion to join in Goetting's suppression motion and adopt the factual findings from the hearing. R. 38. In his recommended disposition Judge Wier granted Walton's motion to join Goetting's motion. R. 49 at 1 n.1. The Court adopts that holding and grants Walton's motion, R. 38.

Walton, R. 44, and the United States, R. 46, briefed the issue of whether Walton has standing to challenge the search of Goetting's vehicle. To have standing to challenge a seizure,

6

"one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (quoting *Rakas v. Illinois*, 439 U.S. 128, 134-35 (1978)).  The KSP arrested Walton separately before they stopped Goetting.  Walton was not in Goetting's car when it was stopped, thus, Walton does not have standing to challenge the seizure.  Regardless, since Walton joins Goetting's motion, R. 38, the motion is also denied as to Walton, and Judge Wier's recommended disposition, R. 49, is adopted.

**III.  Conclusion**

Accordingly, it is **ORDERED** as follows:

(1)  The motion to suppress the evidence, R. 23, is **DENIED** as to the defendant Goetting.

(2)  Walton's motion to join in Goetting's motion to suppress, R. 38, is **GRANTED**. The motion to suppress the evidence, R. 23, is **DENIED** as to the defendant Walton.

(3)  Judge Wier's recommended disposition, R. 49, is **ADOPTED** with respect to both motions.

This the 15th day of March, 2010.



Signed By:
*Amul R. Thapar*  AT
**United States District Judge**